**NATIONAL BOULEVARD BANK OF CHICAGO, Plaintiff,**

v.

**Meyer SCHWARTZ, Defendant.**

United States District Court
S. D. New York.

July 10, 1959.

Duncombe, Oltarsh & Schott, New York City, for plaintiff, Virginia C. Duncombe, Kenneth S. Oltarsh, New York City, of counsel.

Fried, Beck, Tannenbaum & Field, New York City, for defendant, Hyman Fried, Abbie Goldstein, New York City, of counsel.

DAWSON, District Judge.

This is a motion brought on by plaintiff for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The plaintiff is a national banking association located in Chicago, Illinois, which, by mistake, paid a check drawn on it in spite of a "stop payment" order of which it had notice. Defendant is an individual, a resident of New Jersey, who was the payee on the check in question. This action is brought by the drawee bank against the payee of the check to recover $25,000, the amount of the check. By stipulation the parties have withdrawn any objection to venue laid in this court.

### Facts

For the purpose of this motion, and from the papers submitted, it appears that the following facts exist without substantial controversy:

On January 12, 1959, State-Wide Properties, Inc., which maintains a checking account with plaintiff, advised plaintiff by letter to stop payment on a $25,000 check which had been issued to the defendant and post-dated to January 15, 1959. On January 14, 1959, State-Wide addressed a letter to the defendant payee notifying defendant that it had stopped payment on the check. Defendant has admitted receiving this letter of notification "not earlier than January 16, 1959." In the meantime, however, on January 15, 1959, the defendant payee endorsed the check in the following manner:

"For Deposit Only

Meyer Schwartz"

Defendant then deposited the check in a regular checking account maintained with the Chase Manhattan Bank of New York City.

In due course, on January 20, 1959, the check was presented to plaintiff bank and, through some clerical error, was honored for payment. Since the Chase Manhattan Bank in New York City had requested wire advice as to whether the check was paid or not, the plaintiff bank wired Chase Manhattan that the check was paid on January 20th. Later that same day plaintiff bank discovered its error and telephoned the Chase Manhattan Bank and requested that payment to the defendant not be made, only to learn that payment had already been made to the defendant. Subsequently the plaintiff bank restored the $25,000 to the credit of its depositor, State-Wide, and by letter addressed to the defendant demanded the return of the $25,000, which has been refused.

Although not relevant to the issues presented on this motion, it may be of some interest to indicate the origin of this controversy. It appears that the defendant is a real estate broker who, during the months of May, June and July of 1958, negotiated the sale of "The Engineering Building" in Chicago from State-Wide to a group of New York investors. As alleged by defendant, State-Wide had agreed to pay to defendant $50,000 as commission on the transaction. After title closed on January 5, 1959, a check for $25,000 was given to defendant, which was deposited and cleared through the bank. Subsequently a second check for $25,000, post-dated to January 15, 1959, was given to the defendant to complete payment of the brokerage commission. State-Wide thereafter issued a "stop payment" order on this second check, which is the subject of this action, claiming that there was a failure of consideration.

### Discussion

The vice-president and cashier of the plaintiff bank, by affidavit, has stated that its depositor, State-Wide, did not execute any agreement absolving plaintiff bank if the bank honored the check despite an order to stop payment. He

further stated, and this has not been contradicted, that the plaintiff bank restored to State-Wide's account the $25,000 and that therefore the plaintiff has accordingly suffered a loss by the refusal of defendant to return the cash proceeds of the check. Under the Uniform Negotiable Instruments Law, as well as under Illinois law, a drawer can stop payment on his check and the drawee bank is thereafter liable to the drawer if the bank pays the check. Ozburn v. Corn Exchange National Bank of Chicago, 1917, 208 Ill.App. 155. The plaintiff bank, then, properly restored the funds to the account of its depositor and is therefore a proper party to bring this action.

■ Where a bank makes a payment after notice of a stop-payment order by the drawer, the general rule is that the drawee bank cannot recover from the payee. First National Bank of Chicago v: Molesky, 1957, 15 Ill.App.2d 470, 146 N.E.2d 707. However an exception has been created if at the time of presentation and payment the payee has notice that payment has been stopped; then the payee has no right to retain the proceeds of the check mistakenly paid by the bank. Smith & McCrorken, Inc. v. Chatham Phenix National Bank & Trust Co., 1933, 239 App.Div. 318, 267 N.Y.S. 153. This exception was recognized in the Molesky case where the court, in upholding the general rule, stated that the bank could not recover unless it could charge defendant with knowledge that at the time of the presentation of the check and payment thereof he was not entitled to payment. In the instant case the check was presented for payment and was paid by the plaintiff bank on January 20th when it was received in the mail from the Chase Manhattan Bank. Since defendant concedes that he had knowledge of the stop-payment order on or immediately after January 16, 1959, it is clear that defendant had the proper notice prior to the date of presentation and payment of the check.

■ Defendant, in his brief, draws a parallel between this case and cases where banks have mistakenly made payments of overdrafts. The rule is that where a drawee pays an overdraft, he cannot recover from the payee, except for fraud or material mistake. Oddie v. National City Bank of N. Y., 1871, 45 N.Y. 735; Manufacturers Trust Co. v. Diamond, 1957, 10 Misc.2d 142, 169 N.Y. S.2d 941. However, where the party to whom payment was made knew that the drawer's account was insufficient, the drawee may recover from such party. Britton, Bills and Notes, § 137 (1943); Marie Antoinette Realty Co. v. Yorkville Bank, 1924, 123 Misc. 522, 205 N.Y.S. 395. There is, therefore, nothing inconsistent between these analogous cases.

■ We come now to a determination of the legal effect of the fact that defendant did not have knowledge of the stop-payment order on January 15, 1959, when the check was deposited with the Chase Manhattan Bank in New York, this knowledge being acquired subsequent to deposit for collection, but prior to actual presentment and payment. (The defendant claims that he actually deposited the check with the Chase Manhattan Bank on January 12th. However, the bank records indicate that the deposit was made on January 15th). If Chase Manhattan Bank merely acted as an agent for collection of the check, the knowledge of the payee prior to presentment for payment would be effective to preclude payee's right to retain the proceeds of the check. On the other hand, if the Chase Manhattan Bank became a holder in due course through a negotiation of the check from the depositor to the bank, then it would seem that the payee's knowledge would not be chargeable to the Chase Manhattan Bank, and the general rule would apply.

■ The relationship that exists between a depositor and his bank depends on the intention of the parties, which is determined from the facts and circumstances surrounding the transaction. Martin v. Huber, Sup., 1946, 68 N.Y.S. 2d 53. Where a commercial paper is deposited for collection and where the facts show no other intention or agreement,

the general rule is that the depositor retains title to such paper. 9 C.J.S. Banks and Banking § 221a; In re Bank of Cuba in New York, 198 App.Div. 733, 191 N.Y.S. 88. There is some extrinsic evidence, indicated by the behavior of the defendant and the Chase Manhattan Bank, that the bank was merely an agent for collection. When the check was mistakenly cleared on January 20, 1959, Chase, at the request of the defendant, notified defendant of this fact. Immediately thereafter, on that very same day, the defendant withdrew from his account checks amounting to approximately $20,-000. In any event, the New York Negotiable Instruments Law, § 350–a, which is applicable in this case to determine the relationship between the defendant and the Chase Manhattan Bank, provides as follows:

"§ 350–a. Bank as agent for collection

"Except as otherwise provided by agreement * * * where an item is deposited or received for collection, the bank of deposit shall be agent of the depositor for its collection * * *."

It is also to be noted that the check had on it the following restrictive endorsement:

"For Deposit Only

Meyer Schwartz"

By virtue of the New York Negotiable Instruments Law, § 350–c,[1] this restrictive endorsement is interpreted to mean that the bank merely becomes an agent for collection of the note, and not the owner. It is clear then that the payee is chargeable with knowledge of the stop-payment order on the date of presentation and payment. Therefore, under the law, the payee has no right to retain the proceeds of the check.

The real substance of this dispute involving the payment of $25,000, is between the defendant and State-Wide Properties, Inc. Although the defendant may have a valid and meritorious argument in the dispute with State-Wide, he may not shift the burden of his lawsuit to an innocent party, the plaintiff in this action, by retaining the proceeds of this check.

Since there are no genuine issues as to any material fact, for the reasons stated, the plaintiff is entitled to a judgment as a matter of law. Let judgment be entered accordingly. So ordered.

---

[1]. "§ 350–c. Legal effect of indorsements
"An indorsement of an item by the payee or other depositor 'for deposit' shall be deemed a restrictive indorsement and indicate that the indorsee bank is an agent for collection and not owner of the item."